IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Willie B. Blake, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 C 5856 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| Brian D. Bradley and | ) | |
| United States of America | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Willie B. Blake sues Federal Bureau of Investigation Special Agent Brian D. Bradley under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). In his four-page complaint, Plaintiff alleges Fourth Amendment violations (Count I) and false arrest (Count II). The United States filed a Notice of Substitution of Defendant as to any common-law tort claims, certifying that, at all times relevant, Defendant Bradley acted within the scope of his federal employment. *See* [23]. Defendants Bradley and the United States move to dismiss Plaintiffs' complaint in its entirety. *See* [12], [22], [24], [31]. For the reasons stated below, this Court grants Defendants' motions, dismisses Plaintiff's Fourth Amendment *Bivens* claim with prejudice, and dismisses Plaintiff's tort claim without prejudice.

I. **The Complaint's Allegations**

This case arises from a criminal investigation conducted by Defendant Bradley, a Special Agent with the FBI. [20] ¶ 5. On October 2, 2018, Defendant

1

Bradley arrested Plaintiff pursuant to a warrant obtained based upon a sworn criminal complaint that included an affidavit attested to by Bradley. *Id.* The sworn criminal complaint alleged that Plaintiff: (1) distributed packages of heroin to various locations on the west side of Chicago; (2) turned over proceeds from the heroin distributed to "LAKE DTO;" (3) conspired with others to distribute heroin as part of a criminal enterprise; and (4) conspired with others to knowingly and intentionally possess with intent to distribute a controlled substance, namely heroin. *Id.* ¶ 6. After his October 2, 2018 arrest, Plaintiff remained incarcerated for ten days, until the government voluntarily dismissed the complaint against him. *Id.* ¶¶ 9, 11.

Plaintiff sued, alleging that the criminal complaint's allegations were false and that Defendant Bradley, knowing this, nevertheless provided an affidavit attesting to the truth of the allegations. *Id.* ¶ 7. Plaintiff claims that the criminal complaint and Defendant's affidavit caused the court to issue a warrant for Plaintiff's arrest without probable cause. *Id.* ¶ 8. Plaintiff claims his arrest and incarceration violated his Fourth Amendment rights. *Id.* ¶ 10. Plaintiff also alleges that, in swearing the complaint and affidavit, Defendant Bradley made allegations with malicious, wanton, oppressive, willful, conscious, and reckless disregard for the matters asserted against Plaintiff, and that Defendant arrested Plaintiff without probable cause. *Id.* ¶ 14. Plaintiff seeks compensatory and punitive damages for the violation of his rights. *Id.* at 3–4.

Defendants move to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6), [22], [24], and they also seek to dismiss any Federal Tort Claims Act claim under Rule 12(b)(1).

## II. <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully: *Iqbal*, 556 U.S. at 678. Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements will not suffice. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In evaluating a complaint under Rule 12(b)(6), this Court accepts as true all well-pleaded allegations and draws all reasonable inferences in the plaintiff's favor. *See Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court construes the Complaint in the light most favorable to Plaintiff, accepts as true all well-pleaded facts, and draws all reasonable inferences in his favor. *See Long v. Shorebank Dev't. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Plaintiff bears the burden of establishing that his Complaint meets the Court's jurisdictional requirements. *See Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014). Once jurisdictional allegations are challenged,

Plaintiff must support those allegations by competent proof. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942). For a Rule 12(b)(1) motion, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether, in fact, subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation omitted).

### III. Discussion & Analysis

Defendants seek to dismiss Plaintiff's Fourth Amendment claim, arguing that the claim may not proceed under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). [32] at 4. They also argue that Plaintiff's tort claim (Count II) is precluded based upon Plaintiff's failure to exhaust administrative remedies available to him under the Federal Tort Claim Act, 28 U.S.C. §1346(b). *Id.* at 6. This Court addresses these arguments in turn.

#### A. Plaintiff's Fourth Amendment Claim Under *Bivens* (Count I)

Plaintiff first alleges that Defendant Bradley, acting as a federal agent, knowingly supplied false information to obtain a warrant for Plaintiff's arrest. [20] ¶ 7. As a result, Plaintiff was arrested without probable cause and wrongfully incarcerated for ten days, in violation of the Fourth Amendment. *Id.* ¶ 9.

In his initial complaint, Plaintiff sought to remedy his alleged constitutional rights violation under 42 U.S.C. § 1983. [1] at 3. Defendant moved to dismiss, arguing that Defendant's status as a federal agent precluded Plaintiff's claim under § 1983. [12] at 3–6. Plaintiff apparently agreed (and rightfully so, as § 1983 by its terms applies only to state actors, not federal officers, *e.g., Ziglar v. Abbasi*, 137 S.

Ct. 1843, 1854 (2017) (noting that § 1983 provides a remedy for constitutional rights violations committed by state officials and that "Congress did not create an analogous statute for federal officials."), and he amended his complaint to sue under *Bivens*.

*Bivens*, which the Supreme Court decided in 1971, analyzed whether a constitutional violation by a federal officer "gives rise to a cause of action for damages." *Id.,* 403 U.S. at 389. In *Bivens*, federal agents entered Bivens' home and arrested him without a warrant. *Id.* The agents conducted a search in front of Bivens' family and threatened to arrest his wife and children. *Id.* Bivens brought a claim directly under the Fourth Amendment for constitutional violations committed by these federal agents. *Id.* While a remedy under § 1983 was not available, the Supreme Court held that courts should "adjust their remedies so as to grant the necessary relief" where "federally protected rights have been invaded." *Id.* at 392. In *Bivens,* the Supreme Court created an implied cause of action under the Fourth Amendment for constitutional violations committed by federal officials. *Id.*

After *Bivens*, the Supreme Court recognized implied causes of action under the Constitution in two other cases: a gender discrimination claim under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment cruel and unusual punishment claim in the prison context, *Carlson v. Green*, 446 U.S. 14, 19 (1980). These "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1855 (2017). And any further expansion of the *Bivens* remedy to new contexts constitutes "disfavored judicial activity." *Id.* at 1856–57. Indeed, the Supreme Court

5

has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* at 1857 (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

The Supreme Court has instructed that the proper test for determining whether a case presents a "new context" under Bivens is as follows:

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859–60. If the facts do not create a "new context" for a *Bivens* action, then the action may proceed; if, on the other hand, the facts do constitute an expansion of *Bivens*, then the Court must perform a "special factors" analysis. *Id.*

Here, Plaintiff seeks to bring a claim against an FBI agent for false arrest and wrongful incarceration. Plaintiff's claim has at least some common features with the claim raised in *Bivens* itself. In *Bivens*, the plaintiff alleged his Fourth Amendment rights were violated when he was arrested and confined without a warrant. 403 U.S. at 389. Plaintiff alleges that his Fourth Amendment rights were violated when Defendant obtained a warrant for his arrest based on allegations Defendant knew to be false, which resulted in Plaintiff's arrest. [20] ¶ 7. Both cases involve a Fourth Amendment unreasonable search and seizure claim against federal officers. But the

6

claims are far from identical: *Bivens* involved a Fourth Amendment claim based upon the warrantless search of Bivens' home in front of his family, and this case involves the alleged fabrication or falsification of representations to support probable cause. The differences "are perhaps small, at least in practical terms" but given the Court's "expressed caution about extending the *Bivens* remedy, the Court finds that Plaintiff's claim here satisfies the new-context inquiry. *See Abbasi*, 137 S. Ct. at 1865 ("Some differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context. But here the differences identified above are at the very least meaningful ones.").

In arguing that this case differs meaningfully from *Bivens*, Defendants cite *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021), which holds that a search and seizure pursuant to a warrant (which occurred in Plaintiff's case) falls under a different legal standard than an arrest with *no warrant* (as in *Bivens*). *Id.* at 136. Thus, although both cases involve Fourth Amendment claims, that alone is not dispositive. Relatedly, *Chappell v. Wallace*, 462 U.S. 296, 305 (1983) declined to extend *Bivens* to a Fifth Amendment Due Process claim for unlawful termination, despite *Davis*, which also involved a Fifth Amendment claim, because Chappell was a military service member, whereas Davis was a congressional employee. Similarly, *Carlson* and *Malesko*, 534 U.S. 61, 74 (2001), both involved *Bivens* claims under the Eighth Amendment, but the Court declined to extend *Bivens* to *Malesko* because the claim was asserted against private prison officials rather than public officials as in *Carlson*.

7

Furthermore, legal standards change across various kinds of Fourth Amendment violations. False execution of warrants, false arrest, and malicious prosecution are separate claims under the Fourth Amendment and are decided differently based upon the facts presented. *See Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) ("'Judicial guidance' differs across the various kinds of Fourth Amendment violations—like seizures by deadly force, searches by wiretap. . . ."). In *Cantú*, the Fifth Circuit noted that courts "do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" 933 F.3d at 422 (quoting *FDIC v. Meyer*, 510 U.S. 471, 484 n.9 (1994)). Assessed at the proper level, Plaintiff's claim constitutes a "new context" – indeed, as in *Cantú*, Plaintiff here has not alleged that officers entered his home without a warrant or violated his rights of privacy; rather, Plaintiff, like *Cantú*, alleges that Defendant falsely implicated him in criminal activity. *See Cantú*, 933 F.3d at 423. Plaintiff's claim, like *Cantú*'s claim, is thus "meaningfully different from the Fourth Amendment claim at issue in *Bivens*." *Id.* *See also Zhang v. Schuster*, No. 18-cv-3283, 2022 WL 615015, at *9–10 (N.D. Ill. Mar. 2, 2022) (finding that claim alleging that defendant fabricated evidence and lied about what took place thus resulting in the false arrest of the plaintiff alleges "a different type of Fourth Amendment claim than the one at issue in *Bivens*."). A claim alleging that an FBI agent willfully duped a judge into believing that Plaintiff committed a crime for the purpose of fraudulently securing an arrest warrant, and thus the wrongful arrest and incarceration of Plaintiff, presents a new *Bivens* context, necessitating a "special factors" inquiry.

With regard to the special factors analysis, a court should take "a far more cautious course before finding implied causes of action" that centers on separation of power principles. *Abbasi*, 137 S. Ct. at 1856. Furthermore, if an alternative remedial structure exists, this may preclude a *Bivens* remedy even where the alternative remedy is not equivalent to the remedy in *Bivens*. *Id. See also Engel v. Buchan*, 710 F.3d 698, 704 (7th Cir. 2013) ("the existence of a comprehensive, alternative remedial scheme may preclude a *Bivens* remedy even where the alternative relief is imperfect compared to *Bivens*."). For example, in *Abbasi*, 137 S. Ct. at 1849, the Supreme Court declined to extend the *Bivens* remedy, finding that injunctive or habeas corpus relief provided alternative remedies: "Indeed, the habeas remedy, if necessity required its use, would have provided a faster and more direct route to relief than a suit for money damages."

Similarly, in *Bush v. Lucas*, 462 U.S. 367 (1983), the Supreme Court held that no *Bivens* remedy was available where a federal employer committed a First Amendment violation because Congress had passed legislation that included extensive statutory and administrative remedies in cases where federal government employees' First Amendment rights were violated while employed. *Id.* at 368.

Later, in *Schweiker v. Chilicky,* 487 U.S. 412 (1988), the Supreme Court also found that no *Bivens* action was available for a due-process violation in connection with the denial of disability benefits because alternative relief was available through the Social Security Administration. *Id.* at 414 ("When the design of a Government program suggests that Congress has provided what it considers adequate remedial

9

mechanisms for constitutional violations . . . we have not created additional *Bivens* remedies.").

Post *Abbasi*, the Seventh Circuit held that the existence of an alternative statute that provides a remedy (namely, the Commodities Exchange Act) precluded a *Bivens* claim. *See Effex Cap., LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 892 (7th Cir. 2019) ("An alternative remedial structure counseling hesitation against expanding the *Bivens* remedy is certainly present here . . . . In the Commodity Exchange Act, Congress has set forth, with significant precision, the remedies available. . . .").

Defendants urge the Court to reject Plaintiff's claim because the Federal Tort Claims Act provides an alternative process of redress. [12] at 9. Plaintiff failed to respond to this argument, thus waiving any opposition. *E.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). As such, this Court grants Defendants' motions to dismiss based upon Plaintiff's failure to respond.

In the alternative, this Court also dismisses Plaintiff's claims based upon the merits of the Defendants' motions. Under the FTCA, 28 U.S.C. § 1346(b), federal law enforcement officers may be held liable for the torts of false imprisonment, false arrest, abuse of process, or malicious prosecution. *See Millbrook v. United States*, 569 U.S. 50, 57 (2013) (describing the FTCA's law enforcement proviso which defines "investigative or law enforcement officer" to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.").

In *Carlson*, 446 U.S. at 20, the Court held that the plaintiff could proceed with his *Bivens* claim despite the FTCA because the FTCA and *Bivens* "provide parallel,

10

complementary causes of action." *See id.* at 18–19 (A *Bivens* claim may be defeated in a particular case, "in two situations. The first is when defendants demonstrate 'special factors counselling hesitation in the absence of affirmative action by Congress.' The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective. Neither situation obtains in this case.") (citations omitted).

But *Abbasi (*decided 37 years later*)* holds that an alternative remedial structure precludes the *Bivens* claim. 137 S. Ct. at 1858 ("if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action. For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'"). And *Abbasi* specifically noted that *Carlson* was decided in the "*ancien regime*," before the "notable change in the Court's approach to recognizing implied causes of action." *Id.* at 1855–57.

Thus, in *Cantú,* the Fifth Circuit found that the law enforcement proviso under the FTCA provided an elaborate statutory scheme with the possibility of a damages remedy, and therefore served as a sufficient alternative to the plaintiff's constitutional claims. 933 F.3d at 423 (citing *Abbasi*, 137 S. Ct. at 1858 and noting that an alternative remedy "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action").

11

The FTCA specifies that it is the exclusive remedy for injuries resulting from a federal official's torts while acting within the scope of employment. 28 U.S.C. §§ 1346(b), 2679(b)(1); *see also Duffy v. United States*, 966 F.2d 307, 310 (7th Cir. 1992). And this remedial scheme constitutes a special factor cautioning against the expansion of *Bivens* in this arena.

The notion that the existence of an alternative statute might preclude a *Bivens* action is not novel. In *Minneci v. Pollard*, 565 U.S. 118 (2012), the Supreme Court held that if state tort law provides an adequate alternative remedy to protect constitutional rights, the judiciary should not interfere by prescribing a new federal claim. *Id.* at 129. As the court noted in *Zhang*, "since *Abbasi*, many courts have found that even the potential availability of relief under the FTCA weighs against permitting a *Bivens* remedy." 2022 WL 615015, at *12 (citing *Cantú*, 933 F.3d at 423; *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020); *Greenpoint Tactical Income Fund v. Pettigrew*, 2021 WL 461560, at *13 (E.D. Wis. 2021); *Martin v. Gray*, 2021 WL 3855566, at *5 (E.D. Wis. 2021)).

Defendants point out additional special factors that should preclude any extension of *Bivens*, including the "burdens on Government employees who are sued personally" and the effect on the government overall. *Abbasi*, 137 S. Ct. at 1858. Defendants also argue that judicial interference into the executive branch's prosecutorial function constitutes a special factor. Although it is true that an implied cause of action for Plaintiff's claim would "require courts to interfere in the executive branch's investigative and prosecutorial functions," *Zhang*, 2022 WL 615015, at *13 (citing *Annappareddy*, 996 F.3d at 137), ultimately, the Court's decision not to extend

12

*Bivens* rests upon the idea that Congress has not indicated—through the passage of legislation or otherwise—that the Court should create a new cause of action directly under the Fourth Amendment in this case.

Plaintiff may not maintain a *Bivens* claim, and the Court thus grants Defendants' motions to dismiss any such claim with prejudice.

### B. Plaintiff's Common Law Tort Claims

In addition to alleging a violation of his constitutional rights, Plaintiff alleges a tort claim: he alleges that Defendant acted with malicious, wanton, oppressive, willful, conscious, and reckless disregard for the trust of the matters asserted against him by knowingly submitting a false affidavit in support of the Criminal Complaint. [20] ¶ 14. Plaintiff does not clarify whether he seeks to sue under the Federal Tort Claims Act or under state law. But the Seventh Circuit has repeatedly held that "plaintiff in federal court [has] no duty to allege legal theories." *See Klein v. George G. Kerasotes Corp.*, 500 F.3d 669 (7th Cir. 2007). To the extent Plaintiff seeks to sue under the FTCA, Defendants move to dismiss under 12(b)(1) and 12(b)(6), arguing that Plaintiff has failed to exhaust administrative remedies under the FTCA before bringing this case before the Court. Such failure to exhaust, Defendants contend, compels dismissal.

To be sure, the United States may not be sued without express consent. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The Federal Tort Claims Act provides such consent, waiving sovereign immunity, subject to a number of exceptions set forth in 28 U.S.C. § 2680. The "intentional tort exception" preserves the government's immunity from suit for any "claim arising out of assault, battery, false imprisonment,

13

false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," *except for claims arising "out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" that are asserted against "investigative or law enforcement officers of the United States Government."* 28 U.S.C. § 2680(h) (emphasis added). An "investigative or law enforcement officer" is "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* § 2680(h). Thus, sovereign immunity is waived with respect to a claim (like Plaintiff's) alleging false arrest and false imprisonment by an FBI agent. *See, e.g., Liranzo v. United States*, 690 F.3d 78, 94–95 (2d Cir.2012) ("[T]he United States has indeed waived its sovereign immunity from suit as to Liranzo's 'claim,' which 'aris[es] ... out of ... false imprisonment [and] false arrest.'").

But the FTCA itself provides that claims for monetary relief against the United States are prohibited unless administrative remedies are exhausted first. *See* 28 U.S.C. § 2675(a). To "exhaust administrative remedies, the plaintiff must 'have first presented the claim to the appropriate Federal agency,' ... so that the agency has an opportunity to meaningfully consider and address the claim prior to suit." *Chronis v. United States*, 932 F.3d 544, 546 (7th Cir. 2019) (quoting 28 U.S.C. § 2675(a)). Presentation of a claim occurs "when a Federal agency receives from a claimant ... an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a); *Chronis*, 932 F.3d at 546. A proper FTCA administrative claim "contains four elements: (1) notification of the incident; (2) a demand for money damages in the sum certain, (3)

14

the title or legal capacity of the person signing; and (4) evidence of the person's authority to represent the claimant." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014) (citing 28 C.F.R. §14.2(a)).

Plaintiff's complaint does not disclose whether he exhausted his administrative remedies before filing suit. And he has not addressed the issue in his response to the motions to dismiss. But "failure to exhaust administrative remedies prior to bringing an FTCA suit mandates dismissal in favor of the United States, since exhaustion is a prerequisite to suit." *Beard v. United States*, No. 20-CV-47-JPG, 2021 WL 793986, at *2 (S.D. Ill. Mar. 2, 2021), reconsideration denied, No. 20-CV-47-JPG, 2021 WL 2138872 (S.D. Ill. May 26, 2021) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Glade v. United States*, 692 F.3d 718, 723 (7th Cir. 2012)).[1] The Court thus dismisses Plaintiff's FTCA claim without prejudice based upon his failure to exhaust. *See Chronis*, 932 F.3d at 550 (dismissal is appropriate when plaintiff fails to satisfy the exhaustion requirement); *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) ("[T]he proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies.").

---

[1] Defendants argue that the FTCA's exhaustion requirement is jurisdictional, a requirement that cannot be waived. Not so. The Seventh Circuit has explained that it "no longer treats [the FTCA's administrative exhaustion requirement] as a jurisdictional prerequisite." *Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012) ("In *Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008), … and the following year in *Collins v. United States*, 564 F.3d 833, 838 (7th Cir. 2009), we explained that the [FTCA's] requirement of exhausting administrative remedies is not jurisdictional…."). In *Palay v. United States*, 349 F.3d 418, 424 (7th Cir. 2003), the Court held that "statutory prerequisites to suit and exceptions to governmental liability should instead be viewed as aspects of the plaintiff's statutory right to relief and, at the pleading stage, dealt with pursuant to Rule 12(b)(6)."

15

Finally, to the extent Plaintiff actually seeks to pursue some state law tort claim, having dismissed Plaintiff's federal claim, the Court would decline to exercise jurisdiction over any such claim. *See, e.g., Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pend[e]nt state claims.").

## IV. Conclusion

For the reasons explained above, the Court grants Defendants' motions [22], [24], dismisses Plaintiff's Fourth Amendment *Bivens* claim with prejudice, and dismisses Plaintiff's tort claim (whether pursued under the FTCA or state law) without prejudice.

Dated:  March 23, 2022                                     Entered:

                                                                         John Robert Blakey
                                                                         United States District Judge